[Civ. No. 5588.   Fourth Dist.   Dec. 20, 1957.]

ROY C. APPLEGATE et al., Respondents, v. ROBERT F. WILSON et al., Defendants; SUBURBAN GAS SERVICE (a Corporation), Appellant.

Chase, Rotchford, Downen & Drukker, Stanley D. Clark and Otto M. Kaus for Appellant.

Hall, Beck & Thornton for Respondents.

WAITE, J. pro tem.*—This action arose out of a collision between two vehicles shortly after 6 p. m. on January 11, 1954, on Santiago Canyon Road, a highway running in a northerly and southerly direction in Orange County. Roy C. Applegate, accompanied by his wife, Lenore, was driving a Nash automobile in a southerly direction on said highway and a truck owned by Suburban Gas Service was being driven by its employee, Robert F. Wilson, in a northerly direction.

Plaintiffs Applegate sued Wilson and his employer for damages for personal injuries and property damage, and defendant Suburban Gas Service filed a cross-complaint against plaintiff and cross-defendant, Roy C. Applegate, for property damage to the truck.

During the trial, and before final submission of the case, plaintiffs moved to dismiss as against defendant Robert F. Wilson only, which motion was granted. The jury returned a verdict for $7,500 in favor of plaintiffs and against defendant Suburban Gas Service, and further found in favor of the cross-defendant on the cross-complaint. From the judgment entered on these verdicts Suburban Gas Service appeals.

Appellant does not challenge the sufficiency of the evidence, and it is not contended that the amount of the judgment is excessive.

The two grounds urged for reversal are: (1) Prejudicial error by the trial court in the exclusion of certain testimony, and (2) That the dismissal as to defendant Wilson, appellant's employee, was a dismissal with prejudice, constituted a judgment on the merits, and discharged appellant from any liability.

Appellant first contends that the court erred in not permitting appellant to qualify Officer Paul Kelby of the California Highway Patrol as an expert witness and in refusing to allow the officer to testify as to the point of impact between the two vehicles. The accident happened after dark

*Assigned by Chairman of Judicial Council.

on an overcast night in an area unlighted by artificial illumination other than the headlights of the vehicles on the highway, and it is urged that the sharp conflict between the versions given by the two drivers involved necessitates resort to the officer's conclusion as to the point of impact in order to resolve such conflict. Appellant has designated this as "the crucial point on this appeal," since the vehicles met head-on in what is described as a "left front to left front" collision and each driver, respectively, claimed to be on his right side of the highway at the moment of the impact. The witness was permitted to and did testify concerning the physical evidence he observed at the scene of the accident including the location and position of the vehicles after the collision, certain tire marks, gouge marks and other similar matters. He was not permitted to state his conclusion as to where the impact occurred as indicated to him by these physical facts. Neither was the witness allowed to testify that he considered himself "able" or "competent" to determine the point of impact and to testify as to his conclusion on that subject.

Appellant propounded five questions to the officer, to each of which an objection was sustained. These questions are as follows:

"Q. You are required, are you not, to draw certain conclusions in regard to what took place at the scene of an accident?"

"Q. In your investigation of traffic accidents, do you attempt to draw conclusions from the physical evidence of the area, whereabouts on the road the impact occurred?"

"Q. From your twelve and a half years' experience as a Highway Patrolman in investigating accidents, have you acquired the ability, because of this experience, to determine with some degree of accuracy, not simply speculation, the point of impact between two vehicles?"

"Q. Now, in your opinion and because of your experience in investigating accidents of a similar nature, are you competent to testify as to a conclusion concerning the point of impact in such an accident?"

"Q. From your experience as a traffic investigator, are you able to determine from marks on the pavement such as skid marks and tire marks where an accident occurred?"

Most of these alleged "foundational" questions themselves called for conclusions and objections to them were properly sustained. The witness may not decide his own quali-

fications as that is a matter to be determined by the court. Appellant thereafter made the following offer of proof:

"I wish to make an offer of proof as to the testimony of this witness to the effect that this officer is trained to investigate points of impact, he has had twelve and a half years' experience in doing so and that if he could testify he would testify that the point of impact as he determined it would be four to five feet east of the center line of the road on the same side of the roadway that the truck, the pickup truck, was traveling just prior to the impact."

An objection to the offer was sustained and the offer was rejected.

Generally, it is for the trial court to determine the competency and qualification of a witness to state an opinion, and upon appeal its ruling will not be disturbed in the absence of a manifest showing of abuse of discretion. (*Huffman* v. *Lindquist*, 37 Cal.2d 465, 476 [234 P.2d 34, 29 A.L.R.2d 485]; *People* v. *Haeussler*, 41 Cal.2d 252, 261 [260 P.2d 8].) In the latter case and in *Zelayeta* v. *Pacific Greyhound Lines*, 104 Cal.App.2d 716 [232 P.2d 572], a traffic officer was permitted to testify concerning his opinion as to the point of impact. But the ruling of the trial court must of necessity depend on the facts of a particular case, and the discretion reposed in that court is such that in sustaining the ruling in this case it may be said that the decision of the trial court would likewise have been upheld had the court permitted the witness to testify to his opinion. (See *Humiston* v. *Hook*, 86 Cal. App.2d 101, 105 [194 P.2d 122], and cases cited.) Moreover, the officer's statement concerning the point of impact was before the jury in the testimony of Wilson when he testified that the officer said to him, "That's all I want to know, that puts the point of impact about four and a half feet on your side of the road."

Appellant argues that it is evident from the verdict that the jury did not believe Wilson and that the corroborating opinion evidence was necessary to swing the pendulum of credibility in Wilson's favor. We think that if the jury disbelieved defendant driver Wilson's testimony as to how this accident occurred, then no amount of opinion evidence would have obtained a different result.

 Appellant's next contention is that the court erred in excluding defense witness Kelby's testimony concerning the statements made to him by defendant Wilson immediately following the accident. An objection on the ground that the

statement was self-serving and hearsay was sustained. On cross-examination of Wilson he was asked whether he told the officers that the Applegate car had been on the wrong side of the road and Wilson stated that he did not. It is argued that this was an implied admission by Wilson that the Applegate car was on its right side of the road and that the officer should have been permitted to relate Wilson's entire statement made after the accident. Wilson was not asked by either counsel to explain why he had not told the officer that the Applegate car was on the wrong side of the road, nor was he asked to relate the entire conversation. No offer of proof was made and no prejudice appears.

It is next contended that error occurred in the trial court's refusal to admit testimony by Officer Kelby concerning the reasons for the failure to make any tests for intoxication on Mr. Applegate. Appellant cites no authority on the subject and leaves us with the bare assertion that the court erred. Again, no offer of proof was made and the materiality of such testimony is quite obscure. Furthermore, since the subject was not mentioned during cross-examination, it was not proper redirect examination and we think the court's ruling was proper.

Finally, appellant contends that the dismissal of the action as to Wilson was a dismissal with prejudice, constituted a judgment on the merits, and discharged appellant from any liability. We cannot agree with this contention.

The record shows that in the afternoon of the second day of the five-day trial, and during the direct examination of plaintiff Roy Applegate, the following occurred:

"The Court: At this time we will take our afternoon recess."

The following proceedings were had out of the hearing of the jury, with Mr. Hall, an attorney for the plaintiff, besides Mr. Thornton, being present, as well as Mr. McCray and Mr. Clark.

"By Mr. Thornton: Now comes the plaintiff, Roy Applegate and Lenore Applegate, and by their attorneys, Richard Hall and Francis D. Thornton, move to dismiss the complaint in Applegate versus Suburban Gas and Robert Wilson as against the defendant Robert Wilson only.

"The Court (To Mr. Clark): You have no objection?

"Mr. Clark: No objection.

"Mr. Thornton: And we will stipulate that the complaint may be amended to the effect that whenever it is stated and

that it refers to the defendant Robert Wilson that it just refers to Robert Wilson.

"Mr. Clark: So stipulated.

"The plaintiff Roy Applegate then resumes the stand for further examination by Mr. Thornton."

Section 581 of the Code of Civil Procedure sets forth the cases and manner in which an action may be dismissed. Subdivision 4 of that section provides: "By the court, with prejudice to the cause, when upon the trial and before the final submission of the case, the plaintiff abandons it." Appellant maintains that this is the controlling provision in this case.

Subdivision 5 of the section provides that ". . . Dismissals without prejudice may be had . . . after actual commencement of the trial, either by consent of all of the parties to the trial or by order of court on showing of just cause therefor."

Appellant relies on three cases in support of its position, citing *Burnett* v. *Burnett*, 88 Cal.App.2d 805 [199 P.2d 685]; *Fisher* v. *Eckert*, 94 Cal.App.2d 890 [212 P.2d 64]; and *Carvel* v. *Arents*, 126 Cal.App.2d 776 [272 P.2d 858]. However, none of those cases presented the same factual situation that exists in the case before us. In the Burnett case the motion "to dismiss without prejudice" was *immediately* resisted. In *Fisher* v. *Eckert,* the dismissal was followed *immediately* by a motion from defense counsel that the dismissal be ordered with prejudice. In *Carvel* v. *Arents,* defendants objected *immediately* that the action could not be dismissed without prejudice.

In the instant case appellant's counsel at least indicated strongly that he was consenting to the dismissal and the trial continued for three days thereafter on the supposition of all parties and the trial court that the dismissal as to Wilson had been without prejudice. The theory of a dismissal with prejudice was not mentioned to the trial court on the motion for a new trial and the point is raised for the first time on this appeal. We think that by words and conduct appellant's counsel consented to a dismissal without prejudice within the meaning of subdivision 5 of section 581 of the Code of Civil Procedure.

We conclude from the entire record that all parties received a fair trial and that no error prejudicial to appellant occurred.

The judgment is affirmed.

Barnard, P. J., and Mussell, J., concurred.