[Civ. No. 34682. First Dist., Div. Four. Apr. 16, 1975.]

DONALD STUMPF et al., Plaintiffs and Respondents, v.
C. E. STUMPF & SONS, INC., Defendant and Appellant.

## Counsel

Raymond H. Goodrich and Joseph C. Davish for Defendant and Appellant.

Adams, Levin, Kehoe, Bosso & Sachs, Alan J. Levin and Philip R. Bates for Plaintiffs and Respondents.

## Opinion

CHRISTIAN, J.—C. E. Stumpf & Sons, Inc. appeals from a judgment decreeing its dissolution under Corporations Code section 4650.[1] The court found, on substantial evidence, that in 1969 appellant corporation was formed to conduct a masonry and general contracting business. The corporation was wholly owned in equal shares by C. G. Stumpf, Sr. and his two sons, who had previously operated the same business as partners. In 1972, as a result of a managerial dispute, plaintiff-respondent Donald Stumpf, one of the sons, ceased to be employed by the corporation. Thereafter, respondent was removed as an officer of the corporation; he has neither attempted to return nor has he been asked to return to any active status in the family business.

---

[1]Corporations Code section 4650: "A complaint for involuntary winding up or dissolution of a corporation other than one subject to the Bank Act, the Public Utilities Act, the Building and Loan Association Act, or Article 14 (commencing with Section 1010) of Chapter 1 of Part 2 of Division 1 of the Insurance Code may be filed in the superior court of the county in which the principal office is located by the persons described in any of the following subdivisions:

"(a) One-half of the directors.

"(b) A shareholder or shareholders who have been record holders for a period of not less than six months and who hold not less than 33⅓ percent of the number of outstanding shares, exclusive of shares owned by persons who are alleged in the complaint and subsequently found by the court to have personally participated in any of the transactions enumerated in subdivision (e) of Section 4651.

"(c) Any shareholder if the reason for dissolution is that the period for which the corporation was formed has terminated without extension thereof."

The corporation has never paid dividends. Instead, profits have been invested in rental real properties held by the corporation. However, the court also found that, after termination of respondent's active participation in the business, his father and brother had not committed any abuse of authority or displayed persistent unfairness toward respondent.

Appellant argues that Corporations Code section 4651, subdivision (f), as applied to these facts, does not justify involuntary dissolution. Previous dissolution judgments under section 4651, subdivision (f), have been, or could have been, based in the alternative upon other subdivisions of section 4651:[2] *e.g.,* internal dissension resulting in deadlock (§ 4651, subd. (d): *Reynolds* v. *Special Projects, Inc.* (1968) 260 Cal.App.2d 496, 501 [67 Cal.Rptr. 374]); persistent mismanagement (§ 4651, subd. (e): *Buss* v. *J. O. Martin Co.* (1966) 241 Cal.App.2d 123, 134 [50 Cal.Rptr. 206]; *Abalian* v. *Townsend Social Center* (1952) 112 Cal.App.2d 441, 444, 449 [246 P.2d 965]). The judgment in the present case was based solely on section 4651, subdivision (f), and there were no findings or evidence which could support the judgment under any other subdivision of section 4651.

■ Appellant contends that respondent's rights and interests are not jeopardized and that dissolution was not justified. Implicit in this contention is the argument that section 4651, subdivision (f), is not applicable in the absence of some finding of deadlock, mismanagement

---

[2]Corporations Code section 4651 provides: "The court, upon filing of a verified complaint, may entertain proceedings for the involuntary winding up or dissolution of such a corporation, when it is shown that any one or more of the following reasons exist:

"(a) The corporation has abandoned its business for more than one year.

"(b) The corporation has an even number of directors who are equally divided and cannot agree as to the management of its affairs, so that its business cannot longer be conducted to advantage or so that there is danger that its property and business will be impaired and lost.

"(c) The holders of the voting shares of the corporation are so divided into factions that they cannot agree upon or elect a board of directors consisting of an uneven number.

"(d) There is internal dissension and two or more factions of shareholders in the corporation are so deadlocked that its business cannot longer be conducted with advantage to its shareholders.

"(e) The directors or those in control of the corporation have been guilty of persistent fraud, mismanagement, or abuse of authority, or persistent unfairness toward minority shareholders, or its property is being misapplied, wasted, or lost by its directors or officers.

"(f) The liquidation is reasonably necessary for the protection of the rights or interests of any substantial number of the shareholders, or of the complaining shareholders.

"(g) The period for which the corporation was formed has terminated without extension of such period."

of the corporation, or display of unfairness toward respondent. The court specifically found that there had been no mismanagement or unfairness; there was no evidence of corporate deadlock (see Corp. Code, § 816).

It can be inferred that the Legislature did not intend subdivision (f) to be read, as appellant urges, *ejusdem generis;* i.e., the subdivision is not limited in its scope to situations of the kind specified in the other subdivisions of section 4651. This inference can be drawn from the fact, that subdivision (f) was added to section 4651 (formerly Civ. Code, § 404) in 1941 (Stats. 1941, ch. 610, § 2, pp. 2057-2058), while the other provisions of the section had already been in effect for a number of years (originally enacted in Stats. 1933, ch. 533, § 86, p. 1414, and in Stats. 1939, ch. 703, § 1, p. 2220). It would seem superfluous for the Legislature to enact in a separate amendment the broad language of subdivision (f) simply to cover the penumbral areas of the other subdivisions.

It is also indicative of legislative intent that the same enactment adopted section 4651, subdivision (f), and section 4658[3] (Stats. 1941, ch. 610, p. 2058 [§ 4651, subd. (f)], pp. 2058-2059 [§ 4658]). The two provisions, read together, show an intention to empower the courts to order dissolution when required to assure fairness to minority shareholders and at the same time to lessen the danger of minority abuse. Under section 4658, a dissolution judgment does not necessarily entail a sacrifice; the majority may preserve the corporation by buying out the minority. (See Comments, *Dissolution Under the California Corporations Code: A Remedy for Minority Shareholders* (1975) 22 U.C.L.A. L.Rev. 595.)

It is true that courts of some states have narrowly construed provisions similar to subdivision (f), requiring a showing of some kind of management misconduct or deadlock before relief will be granted (see Israels, *The Sacred Cow of Corporate Existence: Problems of Deadlock and Dissolution,* · 19 U.Chi.L.Rev. 778 at p. 782 for a survey of the jurisdictions). In California, a narrow construction of the involuntary

---

[3]Corporations Code section 4658 provides: "In any such suit the holders of 50 percent or more of the outstanding shares of the corporation may avoid the appointment of a receiver or the dissolution of the corporation by purchasing the shares of stock owned by the plaintiffs at their fair cash value.

"If the holders of 50 percent or more of the outstanding shares of the corporation (a) elect to purchase the shares owned by the plaintiffs, and (b) are unable to agree with the plaintiffs upon the fair cash value of such shares, and (c) give bond with sufficient security to protect the interests and rights of the plaintiffs and to assure to the plaintiffs the payment of the value of their shares, the court shall stay the proceeding and shall proceed to ascertain and fix the value of the shares owned by the plaintiffs."

dissolution statute has been urged by Ballantine, who suggested that a broad construction of the statute "make[s] it too easy for an obstreperous minority to interfere with the legitimate control and management of the majority by creating a cash nuisance value." (Ballantine & Sterling, Cal. Corporation Laws (1938 ed.) § 318, at p. 308.)

■ But the danger of minority abuse was evidently recognized and dealt with by the Legislature. The procedure created by the statute does not authorize dissolution at will. The minority must persuade the court that fairness requires drastic relief under section 4651, subdivision (f); involuntary dissolution is not an automatic remedy but, rather, a matter for the court's discretion. "[A] minority stockholder suing under a statute, just as if he were suing in the absence of statute, must still convince the court that his application is meritorious. If the objection were that, because of the possibility of abuse, minority stockholders should not be permitted to ask a court to wind up a corporation, however meritorious the case, the solution would seem to lie in total abolition of the remedy. The reluctance to authorize winding-up a corporation even where such action would be just and equitable contrasts strangely with the arbitrary manner in which a ministerial state official terminates, at a stroke, the existence of great numbers of corporations for failure to comply with comparatively unimportant formalities, such as filing reports or paying a nominal annual tax." (Hornstein, *A Remedy for Corporate Abuse—Judicial Power to Wind Up a Corporation at the Suit of a Minority Stockholder,* 40 Colum.L.Rev. 220, at p. 245.) Further, as we have seen, the threat of minority abuse of subdivision (f) is reduced by the existence of Corporations Code section 4658 (discussed, *ante;* see Israels, *supra,* at p. 791).

The court's exercise of discretion to order dissolution under section 4651, subdivision (f), was consistent with the intent of the Legislature in adopting that provision.

■ Appellant next contends that the court's conclusion that the case called for relief under section 4651, subdivision (f), was not supported by the evidence or by an appropriate finding of fact. There was, however, substantial evidence supporting the findings and judgment. (Cf. *Abalian* v. *Townsend Social Center, supra,* 112 Cal.App.2d 441, 448.) The hostility between the two brothers had grown so extreme that respondent severed contact with his family and was allowed no say in the operation of the business. After respondent's withdrawal from the business, he received no salary, dividends, or other revenue from his investment in the corporation.

Quoting certain remarks by the judge, appellant contends: "The Court showed a certain lack of impartiality, objectivity, and judiciousness throughout the trial." Seen in context, the court's remarks did not show prejudice; the judge was merely discussing candidly with counsel the possible available dispositions of the present case.

The decree is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 11, 1975.